**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1-24-12

------------------------------------------------- X

**UNITED STATES OF AMERICA**

- against -

**MARK HEALEY,**

                              **Defendant.**

------------------------------------------------- X

**OPINION AND ORDER**

**11 Cr. 132 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

**I.      INTRODUCTION**

On September 22, 2011, a jury found Mark Healey guilty of transporting,

distributing, and possessing child pornography in violation of 18 U.S.C. § 2252A. On

November 4, 2011 he moved for a new trial pursuant to Federal Rule of Criminal

Procedure 33, arguing that "the cumulative impact of the Government's multiple

discovery violations was so serious a detriment to the defense's preparation for trial

and the construction of a defense strategy as to deny Mr. Healey due process and a

fundamentally fair trial."[1]  Healey also argues that the Government failed to correct

the false and contrived testimony of a key witness and that the prosecutor then

---

[1]      Memorandum of Law in Support of Defendant's Motion for New
Trial ("Def. Mem.") at 1.

personally and vociferously vouched for that witness's credibility. As a preliminary alternative to a new trial, Healey seeks an evidentiary hearing in order to determine whether the witness perjured himself.[2]  For the reasons explained below, Healey's motion is denied.

## II.    BACKGROUND

### A.    Defense Counsel's Access to Computer Evidence

The Government seized three computers that had belonged to Healey. The parties refer to them as "the Dell Laptop;" the "Encrypted Hard Drive," which had been removed from defendant's desktop Macintosh computer; and the "Imaged Hard Drive," which was seized from the apartment of Healey's boyfriend and was a backup copy of the Dell Laptop.

In late June of 2011, defense counsel asked the Government to provide it "with mirror images of the hard drives from which child pornography would be redacted."[3]  The Government refused to create copies of the hard drives. Instead, the Government said that it would make arrangements for defense counsel "to inspect any of this evidence," and "to make copies of any materials, other than

---

[2]    *See* Reply Memorandum of Law in Support of Defendant's Motion for a New Trial at 2-9.

[3]    Def. Mem. at 4.

child pornography itself, to which the defendant is entitled under Federal Rule of Criminal Procedure 16."[4]

After entering the FBI's offices and being relieved of all electronic devices, defense counsel was "permitted to examine copies of the hard drives while [FBI] Agent Spivack sat in the same small room."[5]  However, at defense counsel's request, the Government sent a mirror image of the hard drives to its offices in Portland, Oregon, so as to facilitate extensive examination by the defense's Portland-based computer expert, Robert Young.[6]  Young was permitted to examine the hard drives outside the presence of any FBI agents, to obtain material (other than child pornography) from the computers, and to use his own programs to analyze the computers.[7]

## B.   Third Parties' Access to Healey's Computers in 2010

Because there was no dispute that the computers at issue belonged to Healey and contained child pornography, both parties understood that "the central

---

[4]     3/3/11 Letter, Ex. C to Memorandum of Law of the United States of America in Opposition to the Defendant's Motion for a New Trial ("Opp. Mem.") at 4.

[5]     Def. Mem. at 4.

[6]     *See id*. at 4 n.1.

[7]     *See* Opp. Mem. at 11.

issue at trial would be whether any child pornography recovered from these devices was placed on them by Mr. Healey or by a third party."[8]  Two of the computers – the Encrypted Hard Drive and the Dell Laptop – were removed from Healey's apartment on June 2, 2010 by Neal Cotton, Healey's roommate, and were seized by the FBI on June 8, 2010.[9]  Whether child pornography was added to the computers over those six days was therefore a crucial issue.

The Government initially believed that nobody had attempted to access the Encrypted Hard Drive or the Dell Laptop during that time.  In the days just before and during the beginning of trial, it learned otherwise and informed defense counsel of this information.[10]  On the basis of this last-minute development, Healey moved for a mistrial or, in the alternative, a continuance.[11]  He was granted a continuance.[12]

### C.   Testimony of Cotton

Cotton testified that he had no interest in pornography.[13]  Defense

---

[8]     Def. Mem. at 15.

[9]     *See id*.

[10]    *See id.* at 18-19 and Opp. Mem. at 29-33.

[11]    *See* Trial Transcript ("Trial Tr.") at 596:8-9.

[12]    *See id*. at 619:23.

[13]    *See id.* at 337:13-24.

4

counsel subsequently found sexually explicit photos on Cotton's Google profile.

When he was recalled to the stand, at defendant's request, Cotton explained that

the photos were personal pictures of ex-lovers and that he did not consider them to

be the same as pornography.[14]   In his summation, the prosecutor told the jury that

Cotton is a "man who, whatever his flaws, came here because he had to come here,

and he told you the truth."[15]   After defense counsel argued to the jury that Cotton

had lied under oath,[16] the prosecutor repeated his argument that Cotton "wasn't

lying to you."[17]

## III.   APPLICABLE LAW

### A.   Federal Rule of Criminal Procedure 33

Federal Rule of Criminal Procedure 33 ("Rule 33") states that "[u]pon

the defendant's motion, the court may vacate any judgment and grant a new trial

the interest of justice so requires."[18]   A conviction should be reversed "only with

---

[14]   *See id.* at 793:9-794:24.

[15]   *Id.* at 1286:18.

[16]   *Id.* at 1297-1298.

[17]   *Id.* at 1327:2.

[18]   Fed. R. Crim. P. 33(a).

5

great caution and in the most extraordinary circumstances."[19] When based upon the

Government's alleged use of perjured testimony, a Rule 33 motion

> must establish the following: (i) the witness actually committed perjury;
> (ii) the alleged perjury was material; (iii) the government knew or should
> have known of the alleged perjury at time of trial; and (iv) the perjured
> testimony remained undisclosed during trial.  When the perjury was
> disclosed during the trial, a new trial should not be granted.  As long as
> the jury is alerted to a witness' lies, the jury – the appropriate arbiter of
> the truth – can sift falsehood from fact and make its own credibility
> determinations.[20]

"A witness commits perjury if he gives false testimony concerning a

material matter with the willful intent to provide false testimony, as distinguished

from incorrect testimony resulting from confusion, mistake, or faulty memory."[21]

"Whether the introduction of perjured testimony requires a new trial depends on

the materiality of the perjury to the jury's verdict and the extent to which the

prosecution was aware of the perjury."[22]

Prosecutors may not vouch for their witnesses' credibility.

---

[19]     *United States v. Zichettello*, 208 F.3d 72, 102 (2d Cir. 2000)
(quotation and citation omitted).

[20]     *United States v. Bourke*, No. 05 Cr. 518, 2011 WL 6376711, at *6
(S.D.N.Y. Dec. 15, 2011) (quotations and citations omitted).

[21]     *United States v. Monteleone*, 257 F.3d 210, 219 (2d Cir. 2001) (citing
*United States v. Dunnigan*, 507 U.S. 87, 94 (1993)).

[22]     *United States v. Wallach*, 935 F.2d 445, 456 (2d Cir. 1991).

> In other words, a prosecutor is prohibited from expressing his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant . . . . An improper remark by a prosecutor will justify a reversal by the Court only if it causes the defendant substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process.[23]

If the defendant does not object at trial to the prosecutor's remarks, his demand for a new trial must be rejected unless it "'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'"[24]

## B.   Federal Rule of Criminal Procedure 16

Rule 16(a)(1)(B) requires that "[u]pon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing" any relevant written or recorded statement by the defendant if the statement is within the government's control and the prosecutor knows or should know that it exists.  Rule 16(a)(1)(E) requires that "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items," if the item is within the government's control and the item is material to preparing the defense,

---

[23]     *United States v. Carr*, 424 F.3d 213, 227 (2d Cir. 2005) (quotations and citations omitted).

[24]     *Id.* (quoting *Johnson v. United States*, 520 U.S. 461 (1997)).

the government intends to use the item in its case-in-chief, or the item was obtained from or belongs to the defendant. Finally, Rule 16(a)(1)(G) requires that the government give the defendant a written summary of any expert testimony that the government intends to use under Federal Rule of Evidence 702, 703, or 705.

If a party fails to comply with Rule 16, the court may order discovery, grant a continuance, preclude the introduction of evidence, or enter any other just order.[25] "The trial court has broad discretion to fashion a remedy for the government's violation of [Rule 16] . . . . The district court's admission of evidence following a violation of Rule 16(a) is not an abuse of discretion requiring a new trial unless the violation caused the defendant substantial prejudice."[26]

### C. Jencks Act

The Jencks Act, also known as Section 3500, requires that "[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement

---

[25]  *See* Fed. R. Crim. P. 16(d).

[26]  *United States v. Thai*, 29 F.3d 785, 804 (2d Cir. 1994) (internal citation omitted). *Accord United States v. Chavez*, 549 F.3d 119, 129 (2d Cir. 2008).

(as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified."[27]

### D.   Adam Walsh Child Protection and Safety Act ("the Walsh Act")

The Walsh Act, signed into law in 2006, imposes the following prohibition on the reproduction of child pornography during criminal proceedings:

> (m)   Prohibition on reproduction of child pornography.
>
> > (1) In any criminal proceeding, any property or material that constitutes child pornography (as defined by section 2256 of this title) shall remain in the care, custody, and control of either the Government or the court.
> >
> > (2)   (A) Notwithstanding Rule 16 of the Federal Rules of Criminal Procedure, a court shall deny, in any criminal proceeding, any request by the defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography (as defined by section 2256 of this title), so long as the Government makes the property or material reasonably available to the defendant.
> >
> > (B) For the purposes of subparagraph (A), property or material shall be deemed to be reasonably available to the defendant if the Government provides ample opportunity for inspection, viewing, and examination at a Government facility of the property or material by the defendant, his or her attorney, and any individual the defendant may seek to qualify to furnish expert testimony at trial.[28]

---

[27]   18 U.S.C. § 3500(b).

[28]   *Id.* § 3509(m).

## IV.   DISCUSSION

### A.   Disclosure of Non-Pornographic Data Under Rule 16

Healey argues that the Government failed to comply with its Rule 16 obligations.  First, he argues that the Government "did not produce [to the defense] the non-pornographic materials found on Mr. Healey's computers."[29]  Second, he argues that "the notion that [defense] counsel could even adequately 'inspect' (let alone copy or photograph) the extraordinarily large and complex files of a computer by examining it at the FBI offices in the company of Agent Spivack defies reality."[30]

It is common practice for the Government to produce to defendants copies of Rule 16 material, either in digital or paper form.  But it is not required by the terms of the rule.  Rather, Rule 16 requires that the Government disclose the material and make it available for inspection, copying, or photographing. Therefore, Healey's repetitious claim that "[p]ursuant to Rule 16, the Government was required to produce this data to the defense," is incorrect.[31]

---

[29]   Def. Mem. at 10.

[30]   *Id.* at 12.

[31]   *Id.* at 11.  Defense counsel misrepresents not only Rule 16, but the cases interpreting it.  *See United States v. Matthews*, 20 F.3d 538, 550 (2d Cir. 1994) (holding that a love letter should have been *disclosed* to the defendant, not *produced* to him).  *See* Def. Mem. at 13-14.

Healey also argues that the Government did not give him a fair opportunity to inspect the relevant non-pornographic materials.  The parties agree that performing forensic examinations of computers is a daunting and difficult process that takes a long time and requires real expertise.  Healey argues that "[t]here is simply no way this task could have been adequately accomplished [by defense counsel and the defense's expert] under the highly restrictive conditions imposed by the [G]overnment."[32]

But Healey does not explain why the conditions imposed by the Government were improper.  He does not allege that the Government limited the amount of time that his counsel or expert could spend with the material, made the scheduling of those inspections difficult, refused to permit his expert to copy the material, or in any other way deprived him of his right to inspect and copy as required by Rule 16.  The fact that the computers seized from Healey contained a large amount of material does not mean that the Government's form of disclosure was improper.

Healey has placed emphasis on a November 21, 2009 webcam video ("the November 21 video") that was particularly helpful to the Government because it showed that the defendant was engaged in chat room conversations

---

[32]     Def. Mem. at 13.

11

regarding pornography.  Healey argues that this video was a "recorded statement by the defendant" subject to disclosure (or what he calls "production") under Rule 16(a)(1)(B)(i).  But, as the Government points out, even assuming that a silent video of a defendant can be considered a recorded statement, "the Government is not required to preview its case or identify which pieces of evidence it believes will be most persuasive."[33]  In the *Brady* context, "the Government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence,"[34] even when that larger mass is enormous, and defendant points to no authority suggesting that inculpatory evidence disclosed under Rule 16 is any different.  The Government mentioned the video at a pre-trial conference on July 6, 2011 and the defense had access to it.

At that July 6 conference, defense counsel informed the Court that he and his expert needed more time to perform the necessary forensic examination of the computer evidence and prepare an adequate defense.[35]  However, defense counsel's request was based on the complexity of the material, not his lack of access to it.  Counsel acknowledged that he had physical access to the computers

---

[33]     Opp. Mem. at 19.

[34]     *United States v. Ohle*, No. 08 Cr. 1109, 2011 WL 651849, at *4 (S.D.N.Y. Feb 7, 2011), *aff'd*, 441 Fed. Appx. 798 (2d Cir. 2011).

[35]     *See* July 6 Transcript, Ex. E to Opp. Mem., at 6-11, 54-56.

since March 3, 2011.[36]  At no point during that conference or afterwards did

counsel request that the Court order a change in the conditions of defense's access

to the evidence.  Instead, defense counsel requested more time and received a six

week adjournment.

      In order to vindicate both the rights of criminal defendants and the

public policy against child pornography, the Walsh Act requires that the

Government provide defendants and their attorneys and experts  "ample

opportunity for inspection, viewing, and examination [of the child pornography] at

a Government facility" and simultaneously prohibits the Government from

producing copies of the illicit material to defense counsel.[37]  Parties and courts

have taken different approaches to handling the inherent difficulties in the

discovery phase of a child pornography prosecution.  In this case, for example, the

prosecution sent a mirror image of the computers to Oregon to facilitate analysis

by defendant's expert at the FBI office there.  In contrast, in *United States v.*

*Knellinger*, the court accepted the defendant's argument that it would be

exorbitantly costly for his experts to perform the necessary examinations inside the

Government's facility and that the Government could not therefore provide the

---

[36]    *See id.* at 11:8.

[37]    18 U.S.C. § 3509(m).

defense with a legally sufficient opportunity to inspect the material.[38]   The court

therefore ordered the Government to provide the defense with copies of the hard

drives, including copies of the child pornography, subject to appropriate protective

orders.

      Healey cites *United States v. Cameron* for the proposition that under

Rule 16 and the Walsh Act, the Government must produce to the defense material

other than child pornography from a computer that contains child pornography.[39]

Although it is true that the court in *Cameron* ordered the government to produce

stored emails and connection logs that had been produced from the third-parties

Yahoo! and Google, the court also made clear that the government did not have an

obligation to remove child pornography from the defendant's online photo albums

and produce the non-illicit photos.[40]   Additionally, the *Cameron* court held that the

---

    [38]    *See United States v. Knellinger*, 471 F. Supp. 2d 640, 650 (E.D. Va.
2007).

    [39]    *See* Def. Mem. at 11 (citing *United States v. Cameron*, 672 F. Supp.
2d 133, 141 (D. Me. 2009)).

    [40]    "[E]ven though Mr. Cameron says that the Government should redact
the images of child pornography from the photo albums it received from the
Internet Service Providers and forward the non-pornographic images, the Court is
unaware why the Government's offer for inspection should not satisfy the
Defendant's need for access. To require the Government to sift through the photo
albums, redact non-pornographic images, and prepare a special document runs
against the principle that the Government is not required to create a document to
respond to a defense request for discovery. In the event Mr. Cameron has
difficulties with the access the Government has accorded, he is free to reinitiate his

government's position – that defendant's counsel and expert could examine and conduct tests upon the defendant's hard drives containing the child pornography only within the confines of a government facility – complied with the Federal Rules of Criminal Procedure and the Walsh Act.[41]

Healey's counsel had access to the computers at issue from March until September of 2011.  When defense counsel asked for additional time to prepare for trial, he received a six week adjournment.  But he never told the Court that the Government's terms of access were problematic or that he could not adequately inspect or copy the computer files.  Counsel had ample opportunity to examine and analyze the computers at issue and cannot now claim a denial of his right to a fair trial after silently acquiescing to the terms of access for six months.

### B.   Failure to Produce Trial Exhibit 33 in Advance of Trial

Healey argues that because the Government failed to produce the November 21 video as an exhibit prior to trial, it should not have been admitted and its admission merits a new trial.[42]  The Government responds that it informed defense counsel in writing that it was not producing electronic exhibits but was

---

request with a more specific justification." *Cameron*, 672 F. Supp. 2d at 141.

[41]     *Id.* at 140.

[42]     *See* Def. Mem. at 7-9.

instead describing their content and would permit him to review them.[43]  At trial, I

informed the Government that it should have produced the electronic exhibits in

full.[44]  However, the Government's failure to produce the November 21 video was

somewhat mitigated because it did produce, in a timely fashion, a PowerPoint

presentation that was made up of the relevant screenshots from the video.  The

failure was further mitigated because after the video was presented to the jury,

defense counsel had a three day weekend to consider its impact and prepare for the

cross-examination of the relevant case agent, a cross examination that lasted two

days.[45]  In combination, these two mitigating factors eliminated the prejudice that

resulted from the Government's failure to produce the exhibit before trial.

### C.    Late Disclosure of Expert Testimony

Healey argues that the Government's delay in disclosing expert

testimony, with regards to the three different computers, caused him substantial

prejudice.  It is true that the Government discovered the evidence underlying the

testimony rather late in the trial, which caused delay and confusion.  But the

Government disclosed the information as soon as it was discovered and thus

---

[43]     *See* Opp. Mem. at 20-21.

[44]     *See* Trial Tr. at 952:22-25.

[45]     *See* Opp. Mem. at 26.

complied with its obligations.  Most importantly, there was no prejudice to defendant because of the content of the information.

### 1.    Activity on the Dell Laptop

Between June 2, 2010 and June 8, 2010, 154 crash log files were automatically created on the defendant's Dell Laptop (which was not in his possession at the time) as a result of a system shutdown.  These files were not created by a human being and no other files were added to the Dell Laptop between those dates.[46]  Healey argues that the Government should have disclosed this information to defense counsel pursuant to Rule 16 – apparently because at one point the Government agents mistakenly thought that the files may have been created by a human.  However,  Rule 16 does not create an obligation to disclose all prior statements of a Government witness (an obligation that the government complied with under Section 3500) and there was no Rule 16 violation with respect to this information.[47]

Between June 1, 2010 and June 7, 2010, there were four unsuccessful attempts to log in to the defendant's Dell Laptop, which was password protected. The Government's expert, Stephen Flatley, only discovered these attempts after

---

[46]    *See* Trial Tr. at 528:11-532:14 and Opp. Mem. at 34.

[47]    *See* Opp. Mem. at 34.

trial began.[48]  On September 14, 2011, the Government disclosed this information

to defense counsel, along with the fact that "no substantive files were created,

altered, or deleted during this period."[49]  This information should have been

discovered and disclosed by the government before trial; however, because the

prosecutor informed defense counsel as soon as he learned of it, there was no

violation.[50]  Additionally, the information was not material: the fact that there were

*unsuccessful attempts* to access the computer does not undercut the Government's

allegation that the files on the computer belonged to Healey.  The late disclosure

caused Healey no prejudice.

### 2.      Access to the Encrypted Hard Drive

On September 14, 2011, after the trial had begun, Flatley informed the

prosecutor that while reviewing data in anticipation of his testimony, he had

discovered that the defendant's Encrypted Hard Drive had been plugged in to a

computer – presumably in order to view the files on the encrypted hard drive –

between June 2, 2010 and June 8, 2010, when the drive was not in the defendant's

---

[48]      *See id*. at 29.

[49]      *Id.*

[50]      The defendant did not object to the timing of the disclosure of these
unsuccessful log-in attempts or seek a continuance with respect to it. *See id.* at 35.

possession.[51]  The prosecutor told Flatley to collect the details of these attempts.[52]

Flatley determined the attempts to access the encrypted hard drive were

unsuccessful and no files were altered.[53]

   The Government submits that the Assistant United States Attorney

informed defense counsel of this new information by telephone on the evening of

September 14 and walked defense counsel through Flatley's anticipated

testimony.[54]  Healey does not concede that such a conversation took place.[55]  The

Government's version of events is bolstered by the fact that he described the phone

conversation in court the next day and defense counsel did not dispute the

account.[56]

---

[51] *See* Trial Tr. 600:9-19.

[52] *See id.*  Healey argues that Flatley and the prosecutor told conflicting stories about when and why Flatley made these examinations. *See* Def. Mem. at 21-24.  The Government correctly points out that this argument is unavailing: the testimony shows that Flatley independently realized that there had been attempts to access the hard drive and was then instructed to investigate the matter further.  *See* Opp. Mem. at 41.

[53] *See* Trial Tr. at 565:1-4; 566:16-567:8.

[54] *See* Opp. Mem. at 30.

[55] *See* Def. Mem. at 20-21 n.6.

[56] *See* Trial Tr. at 600:21-601:1.

19

As I explained during trial, once again the problem was not a matter of the Government's disclosure obligations.[57]  The prosecutor disclosed the information to defense counsel as soon as he learned of it.  The problem was that the Government created new information after the trial began.  However, none of the charges against Healey were based on evidence from the Encrypted Hard Drive.[58]  And, as a result of the last-minute change in Flatley's testimony, the prosecution conceded that it would not introduce evidence from the drive under Federal Rule of Evidence 404(b) to show similar bad acts by the defendant.[59]  Therefore, the only potential impact of the new information was that it might impeach the testimony of Cotton, who had control of the Encrypted Hard Drive between June 2, 2010 and June 8, 2010 and testified that he never tried to access the hard drive.  In order to permit the defendant to develop this line of argument, I granted a continuance and permitted defense counsel to recall Cotton for cross examination.  Defense counsel then had a three day weekend to prepare for that

---

[57]     *See id.* at 614:22-615:1.

[58]     Opp. Mem. at 44.

[59]     *See* Trial Tr. at 617:13-16.  The 404(b) file at issue – a folder entitled "14 years [sic] old girl raped by mail man" – had been the subject of the defendant's opposition motion in limine and the Government argued that "it was powerful evidence, demonstrating that on an encrypted hard drive, to which the defendant alone had the password, there is a movie the title of which is consistent with child pornography."  Opp. Mem. at 45.

examination.  He questioned Cotton extensively in light of the new revelations.

Because the new information was actually somewhat beneficial to the defendant,

because it did not materially impact the substantive evidence against the defendant,

and because defense counsel had sufficient opportunity to argue that it should lead

the jury to have reasonable doubt, it did not substantially prejudice Healey and is

not a reason to grant a new trial.

### 3.    Makeup of the Imaged Hard Drive

A third hard drive – called the Imaged Hard Drive – was a backup

copy of defendant's Dell Laptop.  During the September 6, 2011 pre-trial

conference, the prosecutor said that "[Healey] used this hard drive to back up his

computer.  As a result, the copy is a mirror image in many ways.  It is identical."[60]

The case agent determined before trial that in fact the Imaged Hard Drive was

slightly different from the Dell Laptop in some immaterial ways.  This new

understanding was conveyed to the defendant before trial in accordance with

Section 3500 and defense counsel cross examined the case agent about how his

understanding changed.[61]  There was no Rule 16 violation and no prejudice to the

defendant.

### D.    Testimony of Neal Cotton

---

[60]    Def. Mem. at 18.

[61]    *See* Opp. Mem. at 38.

21

Healey argues that Cotton committed perjury by repeatedly asserting that he has no interest in pornography[62] and that the prosecutor failed to correct this testimony and then personally vouched for Cotton's truthfulness in his closing argument.[63]  The Government argues that Cotton did not commit perjury, that the topic of the alleged perjury was collateral to Cotton's testimony against Healey, that the jury was properly presented with all of the relevant evidence regarding Cotton's credibility, and that there was abundant independent evidence of the defendant's guilt even without Cotton's testimony.[64]  Additionally, the Government argues that it did not vouch for Cotton.

When confronted by defense counsel about the sexually explicit photos on his Google profile and his previous statement that he was not interested in pornography, Cotton gave a debatable but plausible explanation: that he does not consider personal photos of lovers engaged in sexual acts to be pornography, in contrast to depictions of sex between anonymous paid actors for a third party's entertainment.[65]  Defense counsel cross-examined Cotton on this point

---

[62]    *See* Def. Mem. at 35.

[63]    *See id*. at 37.

[64]    *See* Opp. Mem. at 51-56.

[65]    *See id*. at 47.

extensively[66] and argued strongly in closing statements that, as a result of this testimony, Cotton had no credibility.   The defendant cites various cases for the proposition that perjured testimony merits a new trial if it might have or probably would have altered the verdict had its falsity been disclosed to the jury.  But that is not the appropriate standard when the evidence of perjury was presented to the jury, as it was here.[67]  Because the jury was alerted to Cotton's alleged dishonesty, it was able to "sift falsehood from fact"[68] and make its own credibility determinations.  Healey argues that the Court should conduct an evidentiary hearing to determine whether Cotton committed perjury.  Such a hearing is unnecessary here, where the core questions that the defendant seeks to address were already raised at trial and presented to the jury.

The prosecutor repeatedly argued to the jury that Cotton had told the truth.  The American Bar Association's standard for Criminal Justice, which the Second Circuit has cited approvingly, says that in closing arguments, "[t]he prosecutor should not express his or her personal belief or opinion as to the truth or

---

[66]     *See* Trial Tr. at 795-851.

[67]     *See United States v. Canova*, 412 F.3d 331, 349 (2d Cir. 2005).

[68]     *Zichettello*, 208 F.3d at 102.

23

falsity of any testimony or evidence or the guilt of the defendant."[69]  "The

prosecutor is of course entitled to argue forcefully and vigorously to the jury in

support of her witness's credibility. But the argument must be based on evidence in

the record."[70]  Here, the prosecutor argued for Cotton's truthfulness, but he did so

based on corroborating evidence and the jury's "common sense," not on the basis

of his own credibility as a representative of the United States.  Furthermore,

defense counsel did not object to the prosecutor's remarks at the time they were

made, which would have allowed the Court to instruct the jury to treat them as

argument, not evidence.  The prosecutor's remarks did not cause the defendant

substantial prejudice and did not seriously affect the fairness, integrity, or public

reputation of the judicial proceedings.  Reversal is therefore inappropriate.[71]

## IV.   CONCLUSION

For the reasons stated above, Healey's motion for a new trial or an

evidentiary hearing is denied.  Sentencing is scheduled for May 7, 2012 at 4:30

p.m.

SO ORDERED:

---

[69]   ABA Standards for Criminal Justice, Standard 3-5.8(b) (1993).  *See United States v. Modica*, 663 F.2d 1173, 1178 (2d Cir. 1981) (citing an immaterially different previous version of the same standard).

[70]   *United States v. Spinelli*, 551 F.3d 159, 169 (2d Cir. 2008).

[71]   *See Carr*, 424 F.3d at 227.

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            January 24, 2012

**Appearances**

**For the Government:**

Daniel C. Richenthal
Assistant United States Attorney
United States Attorney's Office for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007
(212) 637-2109


**For Defendant:**

Mark Gombiner, Esq.
Ian McDonald, Esq.
Federal Defenders of New York
52 Duane Street, 10th Floor
New York, NY 10007
(212) 417-8772